**Ernesto SANDOVAL, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 01–00–00956–CR, 01–00–00957–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

June 7, 2001.

Discretionary Review Refused Oct. 3, 2001.

R.P. Cornelius, Houston, for Appellant.

John B. Holme, Rikke Burke Graber, Houston, for State.

Panel consists of Chief Justice SCHNEIDER and Justices HEDGES and NUCHIA.

## OPINION

NUCHIA, Justice.

Appellant, Ernesto Sandoval, was charged in separate indictments with two counts of aggravated sexual assault of a child. A jury convicted him of both offenses and assessed punishment at 30 years confinement for each offense. In this appeal, appellant raises the following points of error: (1) factual insufficiency; (2)-(3) admission of hearsay statements; and (4)-(5) impermissible jury arguments. We affirm.

## BACKGROUND

At trial, the State offered the testimony of complainant, Norma Campos, two Houston police officers, and a doctor. The defense called two witnesses, appellant's mother and a niece.

Norma Campos testified that she and her common-law husband, George Sandoval, live in Houston with Campos's two children, complainant, who is eight years old, and her younger brother, who is five years old. In July 1999, George Sandoval's brother, appellant, began living with the family. Appellant got along well with the family, contributed his share of the expenses, and at times looked after the children. Because appellant did not own a car during his stay with the family, Campos would drive him around when needed.

Campos related that on Saturday, August 7, 1999, appellant asked her to drive him to a video store. Before doing so, Campos went into her bedroom to retrieve her purse. When she returned to the living room a few minutes later, after having had a conversation with her husband, she did not see appellant or her children. Campos called out her children's names, but no one responded. Noticing the door to appellant's room closed, Campos began walking towards the room, all the while calling out her children's names. As she got closer, her son emerged from appellant's room, followed by complainant and appellant. Campos noticed that complainant seemed nervous and walked with her head down as she headed directly for the bathroom. Concerned, Campos asked complainant what she had been doing in appellant's room. Complainant answered that appellant had taken her to his room, told "[her] he was going to fuck [her and] ... started kissing [her] ... [l]ike parents get married." After hearing this, Campos rushed complainant to her husband and told him what complainant had said. In response, Sandoval confronted appellant about the accusations made by complainant, but appellant denied them. Appellant was asked to leave the house that night.

Campos testified that the next day, Sunday, August 8, she noticed complainant was not her usual self. Rather than ride her bicycle, for example, complainant watched television all day and then went to sleep.

Campos said that on Monday, August 9, she dropped off her children at a day-care center. Later that day, when she went to

pick them up, she was told by the center's director that a teacher had overheard complainant telling another child about something that had happened to her. When complainant and Campos got in the car to go home, complainant asked Campos whether she could tell her something without Campos getting upset. When Campos reassured her that she could, complainant described to her mother numerous sexual acts performed on her and by her at appellant's demand. The acts included sexual touching, penetration, and fellatio. After hearing this, Campos took complainant to a hospital for an examination. While at the hospital, Houston police officers were called.

When complainant testified, her description of the events was the same as her mother's, with one exception. She said she told her mother about the sexual assaults on Saturday night rather than Monday night.

### DISCUSSION

#### *Factual Sufficiency*

In his first point of error, appellant contends the evidence was factually insufficient to sustain his conviction due to the lack of medical evidence indicating sexual abuse and corroborating testimony to support complainant's allegations.[1]

 Under the factual sufficiency standard, we ask "whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof." *Johnson v.*

*State*, 23 S.W.3d 1, 11 (Tex.Crim.App. 2000). Accordingly, we will reverse the fact finder's determination only if "a manifest injustice has occurred." *Id.* at 12. In conducting this analysis, we may disagree with the jury's determination, even if probative evidence supports the verdict, but we must avoid substituting our judgment for that of the fact finder. *Id.*

 In support of his factual insufficiency argument, appellant points to portions of the trial testimony and culls from them an alternative theory of the case. The main thrust of his theory is that complainant fashioned out of her imagination the sexual assault to avoid a beating at the hands of her mother. This theory is based on the testimony of defense witness Nicki Sandoval, George Sandoval's 23-year-old daughter and appellant's niece. Nicki testified that complainant was fearful of her mother. She said she had been witness to the physical and verbal abuse of complainant, and that she had seen complainant cower in the presence of her mother. When Nicki was asked whether she had reported the physical abuse of complainant to the authorities, she said she had not, despite being aware of the protections offered by an agency like the Child Protective Services. In response to these allegations, Norma Campos was recalled as a witness. When asked about the accusations made by the niece, she denied ever abusing her daughter, but did admit that at times she found it necessary as a mother to discipline her daughter.

In further support of his sufficiency challenge, appellant points to two instances in the record where complainant appeared to contradict her mother.

---

1. Contrary to appellant's assertion, the uncorroborated testimony of a sexual assault victim is alone sufficient to warrant a conviction. *See* TEX.CODE CRIM. PROC. ANN. art. 38.07 (Vernon Supp.2001); *Hellums v. State,* 831 S.W.2d 545, 547 (Tex.App.—Austin 1992, no writ).

First, there was the contradictory testimony of complainant and her mother regarding exactly when complainant told her mother the details of the sexual assaults. Campos said she was not told the details of the abuse until Monday night, after picking up complainant from the day-care center. In contrast, complainant testified that she told her mother everything on Saturday night. Second, appellant points to complainant's testimony denying having fallen off a bicycle, or having told anyone that she had. This was contradicted by medical records entered into evidence indicating her mother told medical personnel that complainant had fallen off a bicycle.

■ The weight to be given contradictory testimony is within the sole province of the jury. TEX.CODE CRIM. PROC. ANN. art. 36.13 (Vernon 1981); see Johnson, 23 S.W.3d at 9. To avoid substituting our judgment for the fact finder's, therefore, we must defer to the fact finder's determinations, particularly those that concern the weight and credibility of the evidence. Johnson, 23 S.W.3d at 9. The State's evidence was not so obviously weak or contrary to the overwhelming weight of the evidence as to be factually insufficient. Appellant's first point of error is overruled.

### Hearsay Statements

#### Outcry Statement

Appellant's second and third points of error allege two separate violations of the hearsay rule. TEX.R. EVID. 802. The first involves the complainant's "outcry" statement. See TEX.CODE CRIM. PROC. ANN. art. 38.072, § 2(a)(2) (Vernon Supp.2001). The second involves hearsay statements contained in medical records offered at trial.

Article 38.072 of the Code of Criminal Procedure provides for a statutory exception to the hearsay rule. That exception applies "only to statements that describe the alleged offense that ... were made to the first person, 18 years of age or older, other than the defendant, to whom the child made a statement about the offense." Id.; Long v. State, 800 S.W.2d 545, 548 (Tex.Crim.App.1990).

■ At trial, appellant's counsel objected to Norma Campos's testimony about what complainant told her occurred, claiming it was hearsay. The trial judge then conducted a hearing outside the presence of the jury before allowing Norma Campos to testify about the sexual assaults. The trial judge concluded that the statements complainant made to her mother satisfied the requirements of article 38.072 and were not hearsay.

For the first time on appeal, appellant claims article 38.072 is inapplicable because complainant testified that she described the alleged offense to her mother on Saturday, not on Monday as her mother had testified. However, appellant's trial objection does not comport with the arguments he makes for the first time on appeal. See Butler v. State, 872 S.W.2d 227, 237 (Tex. Crim.App.1994) (holding that general objection did not preserve error on appeal). Appellant's second point of error is overruled.

### Medical Records Exception

Appellant's third point of error contends the "trial court erred by allowing into evidence hearsay statements contained in State's exhibits 1 and 2." At trial, appellant made hearsay objections to State's exhibits 1 and 2, which are medical records containing Norma Campos's statements, made when she took complainant for medical examination and treatment, regarding complainant's medical history and allegations of sexual abuse.

Rule 803(4) of the Rules of Evidence provides an exception to the hearsay rule

for "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." TEX.R. EVID. 803(4).

■ Whether statements made by one other than the patient are covered by rule 803(4) is an issue of first impression in this Court, and in our review of Texas case law, we find only two cases addressing the issue. In *Macias v. State*, 776 S.W.2d 255 (Tex.App.—San Antonio 1989, writ ref'd), appellant objected to the statement "Mom states that child was a victim of abuse by stepfather [appellant] for past two years." *Id.* at 258–59. There, although the court did mention rule 803(4) and its potential applicability to the objected-to statement, it held appellant had presented nothing for review because the same evidence was read into the record by a subsequent witness without objection. *Id.* at 259. In *Floyd v.. State*, 959 S.W.2d 706 (Tex. App.—Fort Worth 1998, no pet.), the treating doctor testified the complainant's mother told her that complainant had been sexually assaulted by appellant one to two years earlier. *Id.* at 712. The Fort Worth court allowed the doctor's testimony under rule 803(4) without discussion.

Because of the absence of Texas case law addressing the applicability of rule 803(4) to statements made by one other than the patient, we look to cases interpreting Federal Rule of Evidence 803(4), which is identical to Texas rule 803(4), for guidance. *See Fairow v. State*, 943 S.W.2d 895, 902 n. 2 (Tex.Crim.App.1997) ("Generally, the Texas Rules of Criminal Evidence were patterned after the Federal Rules of

Evidence."); *Reed v. State*, 811 S.W.2d 582, 586 (Tex.Crim.App.1991) (noting that the federal rules guide, but do not bind, state courts construing analogous Texas rules); *Montgomery v. State*, 810 S.W.2d 372, 376 n. 3 (Tex.Crim.App.1990) (stating that, when the Texas rule duplicates the federal rule, the federal rule's interpretation should receive greater than usual deference).

■ Federal courts have generally held that the plain language of rule 803(4) does not limit its application to patient-declarant statements. *United States v. Yazzie*, 59 F.3d 807, 813 (9th Cir.1995) (observing that, "[i]n most circumstances, we believe that statements to a doctor by a parent of an injured child could easily qualify as a statement for the purpose of obtaining a proper medical diagnosis"); *see also Wilson v. Zapata Off-Shore Co.*, 939 F.2d 260, 272 (5th Cir.1991) (noting that Federal Rule of Evidence "803(4) does not always require that the out-of-court statements refer to the condition of the declarant"). Before admitting statements under rule 803(4), however, courts must consider two factors. First, the declarant's motive in making the statement must be consistent with the purpose of promoting treatment. Second, the content of the statement must be such as is reasonably relied upon by health providers in treatment or diagnosis.[2] *Lovejoy v. United States*, 92 F.3d 628, 632 (8th Cir.1996); *Wilson*, 939 F.2d at 272; *see generally* 29A AM.JUR.2D *Evidence* § 867 (1994).

Following the guidance of the federal cases, we conclude the fact that the information provided in the medical records came from complainant's mother does not affect the admissibility of the statements

---

**2.** Because "child molestation cases challenge our assumptions about why certain statements might have been made, inquiry into the

declarant's purpose must be exacting." *United States v. Yazzie*, 59 F.3d 807, 813 (9th Cir.1995).

therein. *See Floyd v. State*, 959 S.W.2d 706, 712 (Tex.App.—Fort Worth 1998, no pet.). In circumstances where the parent is giving the information to assist in the diagnosis and treatment of the child, we think the reliability of the statements is very high. A review of the record in this case supports that conclusion. First, complainant's mother relayed the information contained in the medical records for the very purpose of seeking medical treatment in connection with allegations of sexual abuse. Second, the contents of the medical records were relied upon by the medical providers. The information relied upon included specifics about the assault. *See Lovejoy*, 92 F.3d at 632 (observing that "[d]iscovering what is not injured is equally as pertinent to treatment and diagnosis as finding what is injured") (internal quotations omitted); *Beheler v. State*, 3 S.W.3d 182, 189 (Tex.App.—Fort Worth 1999, no pet.) ("The object of a sexual assault exam is to ascertain whether the child has been sexually abused and to determine whether further medical attention is needed."). Based on the two factors noted above, we conclude the trial court did not abuse its discretion in allowing the State to introduce into evidence the medical records in their entirety. Appellant's third point of error is overruled.

### State's Closing Argument

In points of error four and five, appellant complains of the trial court's refusal to grant a mistrial after sustaining defense objections to two statements made by the State's attorney during closing argument.[3]

■ Proper jury argument must fall within one of the following categories: (1) summation of the evidence; (2) reasonable deductions from the evidence; (3) answers to arguments by opposing counsel; and (4) pleas for law enforcement. *Wilson v. State*, 938 S.W.2d 57, 59 (Tex.Crim.App. 1996). To determine whether a party's argument properly falls within one of these categories, we must consider the argument in light of the record as a whole. *Id.* at 61. To constitute reversible error, the argument must be extreme or manifestly improper, violative of a mandatory statute, or have injected new facts that are found to be harmful to the accused into the trial proceedings. *Id.* at 59. Even when the prosecutor mentions facts outside the record during argument, an instruction to disregard will generally cure the error. *Martinez v. State*, 17 S.W.3d 677, 691 (Tex. Crim.App.2000).

The first statement defense counsel objected to concerned the first of two doctors who examined complainant:

They went to the closest one [hospital] or the first one that she could think of, and that happened to be St. Joseph's. There was a doctor there with—the records are there. And that doctor was an emergency room doctor who wasn't trained in sexual assaults—

Appellant contends this statement was an attempt by the State to introduce facts not in evidence to argue that one of the doctors that performed one of the medical exams on complainant was not qualified, thereby discrediting that doctor's conclusion that complainant showed no physical signs of sexual abuse. However, the one doctor the State did call to testify also stated that complainant manifested no physical signs of sexual abuse.

■ Appellant's second objection was directed at the following argument:

---

3. In both instances, at defense counsel's request, the judge instructed the jury to disregard the prosecutor's statements.

We are bringing you, as we mentioned on Friday, just exactly everything that we have. There is no need to embellish anything. Because what you did hear is the testimony from [complainant], who in spite of what [Defense Counsel] said is a child and does deserve to have a little closer attention paid to her than an adult witness, does deserve in her soft-spoken voice to be able to have an adult there that she has spoken to close by to be sure that she understands the question, and that's why the Court, excuse me, and the law allows for us to stand up there or whatever discretion or however the Judge wants to do it. He didn't make an objection when I was standing there, now he wants to argue that somehow that's inappropriate. That doesn't fly.

This argument evidently was in response to the following argument made by defense counsel:

I know most of you have children of your own or have had children of your own, but this was not a little girl that was so traumatized that she couldn't testify and had to be led completely through the direct examination by the prosecutor and sweet-talked into saying everything. She wasn't having a problem testifying.

█ If the defense counsel invites argument, as is the case here, then it is appropriate for the State to respond. *See Albiar v. State*, 739 S.W.2d 360, 362 (Tex. Crim.App.1987). In this case, the prosecutor was responding to defense counsel's argument that complainant was not so emotionally affected by the events of the trial that she needed being "sweet-talked into saying everything." It was proper for the prosecutor to address defense counsel's suggestion that she was in some way manipulating complainant's testimony.

█ Even assuming that the prosecutor's arguments were improper, those arguments were not so extreme as to render ineffective instructions to disregard. *Martinez*, 17 S.W.3d at 691. Appellant's fourth and fifth points of error are overruled.

We affirm the judgment of the trial court.