Koudelka v. State

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-04-426-CR

JOSHUA ADAM KOUDELKA APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  Introduction

Joshua Adam Koudelka 
appeals from his convictions for sexual assault of a child and indecency with a child in two points.  Koudelka complains that the trial court erred by failing to grant a mistrial following two separate allegedly improper jury arguments during the punishment phase of his trial.  We affirm.

II.  Background

Fourteen-year-old Miriam
(footnote: 2) was a freshman at Martin High School when she met twenty-four-year-old Koudelka, who was a substitute teacher.  She testified that he was aware of her age.  Shortly thereafter, they began corresponding by e-mail.  A little over a month later, on June 2, 2003, Miriam invited Koudelka to lunch at her home just before she was to leave on a church-camp trip.  After a short delay when Miriam’s father briefly returned home unexpectedly, Koudelka arrived at  the house and parked at a neighbor’s house because “he didn’t want to arise suspicion.”  After lunch, they went upstairs to the media room where one thing led to another—kissing, breast and genital contact, and eventually sexual intercourse for which Koudelka wore a condom that he had brought with him.  He told Miriam not to tell anyone what had occurred. 

Following the church-camp trip, Miriam and Koudelka resumed corresponding by e-mail.  A week later, Miriam told Koudelka that she felt that he had manipulated her and taken advantage of her.  His response was that maybe it should not have happened but that she should not regret it.  They continued corresponding until mid-July, 2003, when Miriam went on a youth ministry trip.  During the trip she told several people, including a youth counselor and a youth minister, about her romantic interlude.  Miriam’s mother was informed of the situation, the police were notified, and an investigation ensued.  Officer Warman interviewed Miriam, as did Detective Frias, who obtained a signed statement from her.  Frias contacted Koudelka who, after initially denying that he had contact with students outside of school, admitted having sex with Miriam.  He consented to an examination of his e-mails, undertaken by Officer Weaver, and eventually turned himself in to authorities. At some point he admitted to his mother, according to her testimony at trial, that he had sex with Miriam. 

Koudelka was indicted and tried before a jury who heard testimony from Miriam, Koudelka’s mother, and Officers Warman, Weaver, and Frias during the guilt/innocence phase of the trial.  Several witnesses were also called during the punishment phase of the trial:  Erica Tinney, a CPS investigator, testified about an interview she had with Margo, who was sixteen years old at the time of the interview and stated that she had slept in Koudelka’s bed while his parents were at home, was kissed in a way that made her feel uncomfortable, and could feel his erect penis when he hugged her.  Melissa testified that she was a student at Martin High School and that Koudelka hugged her in an inappropriate manner—the hugs were “more of a thrust from his lower half”—and she “felt his penis.”  Jennifer Staples, a probation officer explained to the jury how probation worked for a sex offender.  Donald Whitsel, David Price, and Kitty Ferguson testified on behalf of Koudelka, as did his aunts, Susan Jung and Rebecca Price. 

Koudelka was found guilty on all three counts as charged.  The jury assessed punishment at two years’ confinement for the sexual assault of a child, and ten years’ and four years’ probation, respectively, for the two counts of indecency with a child. 

III.  First Point

In his first point, Koudelka complains that the trial court erred by failing to grant a mistrial following jury argument by the prosecutor during the punishment phase of the trial:

He was there only subbing six brief days, and he accomplished a lot in six brief days.  You heard from [Miriam], but then you also got to hear from [Melissa], didn’t you?  You think [Melissa] liked being here?  I’d submit to you she did not.  But what a coincidence, she too was a freshman.  She too had just turned 15.  And then there’s [Margo], who spent two nights at the defendant’s house right under his mother’s eyes.

Which kind of leads us to something else, doesn’t it?  Community supervision, he does his time in our community.  There is his probation department.  And bless their hearts, they want to protect him, and they couldn’t bring themselves to even admit to you that it was wrong to do what he did.  Do you really think when they’re called on, that they will come forward and say [Koudelka] has got another 14-year-old playmate?  You think that’s going to happen?  That’s not going to happen.     

So then what are we left with?  We’re left with the Community Supervision Department, and, you  know, if I was any good at math, I might be a surgeon too and I’m not.  But I do understand the significance of this number and I think you folks do too.  650, the ratio, 650 to 19. That’s 19 individuals who have kids, who get sick, who get burned out, who don’t want to come to work.

An objection to the last paragraph was followed by an instruction to disregard, which was followed by the denial of a motion for mistrial.

A.  Analysis

There are four areas of proper jury argument: (1) evidence summation, (2) reasonable evidence deduction, (3) addressing opposing argument, and (4) a law enforcement plea.  
Rasmussen v. State
, 822 S.W.2d 707, 711 (Tex. App.—Fort Worth 1991, pet. ref’d).  To determine if the alleged improper argument falls within the purview of one of these areas, it is considered in the context of the entire record.  
See
 
Sandoval v. State
, 52 S.W.3d 851, 857 (Tex. App.—Houston [1st Dist.] 2001, pet. ref’d).  The denial of a motion for mistrial is reviewed under an abuse of discretion standard
, and granting such a motion will only be warranted when the improper argument is so ”prejudicial that expenditure of further time and expense would be wasteful and futile.”  
Hawkins v. State
, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004)
. 
 The determination of whether such an abuse of discretion occurred is made by examining:  (1) the severity of the misconduct, (2) the curative measures that were taken, and (3) the certainty of the punishment assessed absent the improper argument.  
Id.
  Otherwise, an instruction to disregard generally suffices.  
Primes v. State
, 154 S.W.3d 813, 815 (Tex. App.—Fort Worth 2004, no pet.)

B.  Application

Koudelka argues that the jury argument in question “substantially affected the conviction because the argument focused the jury’s attention on matters not pertinent to disposition of the case.”  During the punishment phase of the trial, Koudelka called Jennifer Staples, a probation officer, to testify.  During her cross-examination she testified that 19 probation officers supervise 650 sex offenders in Tarrant County and often rely on interviews with family members to determine compliance with community supervision conditions. 

Koudelka called witnesses on his behalf during the punishment phase, including his mother, who said that her son was an adult and had no particular rules around her house and that she did not know that a fourteen-year old girl (Margo) had spent two nights there in the summer of 2003.  Susan Jung, an aunt, refused to acknowledge that it would be improper for a teacher to date a fourteen-year-old student, and was unaware that Koudelka had e-mailed Miriam from her house.  Rebecca Price, an aunt, characterized sneaking into a man’s house to have sex with his fourteen-year-old daughter as “a normal thing that many teenagers go through” and that such a description of what had occurred was “totally stupid.” 

Hence, when making the complained-of argument, the prosecutor was in part summarizing the evidence of Jennifer Staples and in part making a reasonable deduction from the evidence from the attitude of Koudelka’s relatives.  Only the final sentence of the complained-of argument, regarding supervising personnel who get sick, have kids, get burned out, and do not want to come to work, was improper.  A review of the 
Hawkins
 factors demonstrates that the severity of the improper argument was minimal, a curative instruction was made by the court, and an examination of the record as a whole demonstrates that the certainty of the punishment assessed absent the improper argument was just that, a certainty.  Koudelka’s first point is overruled.

IV.  Second Point 

In his second point, Koudelka complains that the trial court erred by failing to grant a mistrial following a second alleged improper jury argument during the punishment phase of the trial, wherein the prosecutor argued, “And if [Margo] was in any kind of shape to come up here and testify, she’d be here.”  An objection was followed by an instruction to disregard and the denial of a motion for mistrial.  Previously, Koudelka’s counsel has pointed out to the jury that the jury had heard from a CPS employee instead of from Margo herself.

Turning again to the 
Hawkins
 factors, the State was to some extent responding to the argument of Koudelka’s counsel, albeit with evidence outside the record, and which was, in any case, not severe misconduct.  Further, the court sustained the objection to the argument and instructed the jury to disregard the comment.  Lastly, like Koudelka’s first point, it can be said with certainty that the punishment was certain in the absence of the argument.  Koudelka’s second point is overruled.

V.  Conclusion

Having overruled Koudelka’s two points, we affirm the judgment of the trial court.

PER CURIAM

PANEL F: MCCOY, LIVINGSTON, and DAUPHINOT, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:  August 25, 2005

FOOTNOTES
1:
See 
Tex. R. App. P.
 47.4.

2:
“Miriam,” “Margo,” and “Melissa” will be used as pseudonyms for the

minors.