Affirmed and Memorandum Opinion filed January 12, 2006









Affirmed
and Memorandum Opinion filed January 12, 2006.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-04-00828-CR

NO. 14-04-00829-CR

____________

 

GREGORY
BAILEY, Appellant

 

V.

 

THE STATE
OF TEXAS, Appellee

______________________________________________________________

 

On Appeal from the 230th District Court

Harris County, Texas

Trial Court Cause Nos. 977,377 & 977,378

______________________________________________________________

 

M E M O R A N D U M   O P I N I O N

A jury convicted appellant
Gregory Bailey of two counts of aggravated sexual assault and sentenced him to
nine years confinement for each offense.[1]  In his sole issue on appeal, he challenges
the factual sufficiency of the evidence supporting his conviction.  We affirm.








I.  Factual and Procedural Background

From February through October
2002, P.C. and her daughter, E.C.,[2]
lived with appellant in his Houston apartment. 
Throughout that time, appellant and P.C. were dating.  When the relationship ended, however, P.C.
and E.C. moved to a different apartment with P.C.=s
aunt.  On November 6, 2002, E.C. told
P.C. that appellant Atried to
get in her bootie@ when
they were living with him.  P.C. asked
when it occurred and E.C. responded it happened when P.C. was at work.  When P.C. asked how and where she was
touched, E.C. pointed to her vagina, which she called her Aprivate
part.@  P.C. then reported the complaint to the
police.

The police arranged for E.C. to
be examined by doctors at the Children=s
Assessment Center in Houston.  There she
was interviewed one-on-one by Dr. Debra Parks. 
E.C. told Dr. Parks that appellant touched her Ain my
bootie@ and Ain my
private part in the front@ Awith his
penis and his hand.@  She also stated the contact occurred more
than ten times.  After the interview, Dr.
Parks conducted a physical examination of E.C.=s vagina
and anus.  The results of the anal
examination were normal, but the vaginal examination showed Aclear
evidence of penetrating trauma.@

A formal complaint was filed
against appellant on February 13, 2004. 
He was later indicted on two counts of aggravated sexual assault, one
alleging he put his sexual organ in contact with E.C.=s sexual
organ and one alleging he put his sexual organ in contact with E.C.=s
anus.  Appellant pleaded not guilty to
both charges.  A jury convicted him on
both counts and sentenced him to nine years in prison for each.








II.  Discussion

Appellant argues the evidence
presented to the trial court was factually insufficient to support his
conviction.  In reviewing the evidence for factual
sufficiency, we view it neutrally, setting aside the verdict only if (1) the
evidence supporting the verdict, if taken alone, is too weak to sustain the
finding of guilt beyond a reasonable doubt, or (2) the contrary evidence is so
strong the State could not have met its burden of proof beyond a reasonable
doubt.  Zuniga v. State, 144
S.W.3d 477, 484B85 (Tex. Crim. App. 2004). 
In our evaluation of the evidence, we must be deferential to the
findings of the fact-finder and resist intruding on its role as the sole judge
of the witnesses= credibility and of the weight to be given to the
evidence.  Johnson v. State, 23
S.W.3d 1, 7 (Tex. Crim. App. 2000) (en banc). Our standard of review remains
the same whether the evidence we consider is direct or circumstantial.  Sharp v. State, 707 S.W.2d 611, 614
(Tex. Crim. App. 1986) (en banc).

A.        Evidence Supporting
Conviction

The State called E.C. to testify
to the circumstances of the alleged assaults. 
E.C. testified that one afternoon, after returning to their home
following a visit with appellant=s pastor,
appellant instructed her to take off her clothes and to lie down in the
bed.  She then stated appellant got into
the bed with her, wearing only a pair of boxer shorts.  Once in the bed, E.C. laid on her back and
appellant laid on his stomach.  She
described the ensuing activity as follows:

THE STATE:  Okay. 
Now.  You=re on your back and he is
on his stomach.  Is he on the side of you.?

E.C.:  No.

THE STATE:  Where is he?

E.C.:  On top of me.

THE STATE:  He was on the top of you.  And then what happened?

E.C.:  He moves up and down.








THE STATE:  He moves up and down.

E.C.:  Yes.

THE STATE:  So he is moving up and down, is any part of
him touching any part of you?

E.C.:  Yes.

THE STATE:  Can you tell us what that part is?

E.C.:  His private part.[3]

THE STATE:  His private part is doing what?

E.C.:  Moving up and down.

THE STATE:  And it=s moving up and down on?

E.C.:  Me. 

THE STATE:  Is his private part in your private part or
outside your private part.

E.C.:  In.

THE STATE:  It=s in?

E.C.:  Yes.

THE STATE:  And what does it feel like?

E.C.:  It hurted.

 

E.C. also testified that on
another occasion, similar activity occurred between her and appellant, but this
time, appellant was naked and put vaseline on his Aprivate
part@ before
putting it inside hers.  Finally, E.C.
testified that on a third occasion, appellant Aput his
private part in my behind.@  Using dolls, E.C. demonstrated for the jury
how she and appellant were positioned for both types of sexual encounters.  She also stated that although appellant
entered her vagina more frequently than he did her anus, anal intercourse
occurred on more than one occasion.  On
cross-examination, E.C. stated appellant tried to enter her Aprivate
part@ more
than ten times, and her Arear part@ more
than five times.








Dr.
Rebecca Girardet also testified on behalf of the State.  Although she did not perform E.C.=s
examination, Dr. Girardet reviewed Dr. Parks= records
and a videotape of Dr. Parks=
examination of E.C..  She testified the
anal examination was normal, but also stated penetrating trauma to the anus is
rarely visible.  She explained as follows:

The tissues in the anus
and also in the vagina are what called [sic] a mucus membrane tissue, so it=s just like the moist
tissue that=s inside your mouth.  So a good analogy is when you bite the inside
of your cheek and it feels like a big injury. 
It may bleed but then a few days later it already healed completely and
you don=t have a scar.  The same thing can happen down here.  These tissues are made to accommodate stool
and babies and intercourse, so they=re made to stretch and
will often heal following trauma without any scar.  There can be a scar, but in most cases, there=s not.

 

She also recounted published
studies on this issue that found 75 to 85 percent of girls who said they had
been sexually assaulted did not show any signs of penetrating trauma.  Despite its infrequency, however, Dr. Girardet
testified E.C.=s vaginal examination showed she
had a healed tear in her hymen, providing Aclear
evidence@ of
penetrating trauma.  

On
cross-examination, appellant=s counsel
sought to elicit testimony from Dr. Girardet to support the proposition that
penetrating trauma could come from sources other than a male sexual organ.  Her responses, however, revealed the rarity
of such a circumstance:

APPELLANT=S COUNSEL:  We have no other source that could cause the
tear of the hymen?

DR. GIRARDET: No.  A tear of the hymen represents penetrating
trauma.

APPELLANT=S COUNSEL:  Could penetrating trauma be done through some
foreign object?

DR. GIRARDET:  Sure.

APPELLANT=S COUNSEL:  Could it be self-inflicted by the child
herself?

DR. GIRARDET:  It=d be extremely unlikely.

APPELLANT=S COUNSEL:  Do you know of cases where hymen tears are
manifested themselves [sic] that were caused by an injury or accident that the
child may have suffered in that area of her body such as a hard fall on a
fence?








DR. GIRARDET:  No.

APPELLANT=S COUNSEL:  What about straddling on a bicycle?

DR. GIRARDET:  No.

APPELLANT=S COUNSEL: What about
falling on a pointed object?

DR. GIRARDET:  No.  On
a pointed object?

APPELLANT=S COUNSEL: Yes.

DR. GIRARDET:  It is theoretically possible if she were to
fall just the right way on an upright stick, that would be penetrating trauma.

* *
*

APPELLANT=S COUNSEL:  [I]f there were penile penetration of ten
times  . . . would you not see more than
one tear in the area?

DR. GIRARDET: Not
necessarily.  In fact, usually we don=t see any tears.

APPELLANT=S COUNSEL:  So irrespective of how many times a child who
had no prior sexual encounters, no penetration of the vagina, if she is
presented to you with having been penetrated in the vagina 10, 15, 20 times
ever time, you=re not going to see any
hymen tears generally?

DR. GIRARDET: We could see
hymen tears but most cases don=t have any.

* *
* 

APPELLANT=S COUNSEL:  And you are also telling us, Doctor, that if
the anus has been penetrated ten times or more over a three or four month
period of time, that there will be no manifestation of any tears in that area?

DR. GIRARDET: In most
cases, there will not be any tears. 
Correct.

 

On redirect examination, Dr.
Girardet testified that if E.C.=s vagina
were penetrated by an object as small as a finger, she would not have expected
to see the healed section of her hymen.

Finally,
the State presented the testimony of Dr. Lawrence Thompson, the director of
therapy and psychological services at the Children=s
Assessment Center.  He testified that Adelayed
outcry@ or Adelayed
disclosure@ of acts of abuse was not
uncommon among child victims, and that the absence of the offender from the
home Acould
definitely contribute@ to a
child=s
willingness to reveal what happened.








B.        Evidence Supporting
Acquittal

Appellant
argues no rational trier of fact could conclude beyond a reasonable doubt he sexually
assaulted E.C.  At trial, he offered
evidence to show that E.C. had a motive to lie about appellant=s
behavior, that she incorrectly described appellant=s penis,
and that she showed no emotional or physical manifestations of the alleged
sexual contact.  Appellant also elicited
testimony contradicting assertions made by both E.C. and P.C. regarding the
alleged encounters between E.C. and appellant, and also in regards to the
relationship between P.C. and appellant. 
Finally, appellant elicited testimony suggesting his sexual organ never
came into contact with E.C.=s anus.

On
cross-examination, E.C. testified that she never liked appellant, that he was
mean to her, and that he once whipped her when she did not want to clean
up.  Appellant=s counsel
proceeded to ask E.C. to physically describe appellant=s
genitalia:

APPELLANT=S COUNSEL:  [H]ad you ever seen a man=s private part?

E.C.:  No.

APPELLANT=S COUNSEL:  You did see [appellant=s] private part, is that
correct?

E.C.:  Yes.

APPELLANT=S COUNSEL:  Did you tell anyone connected with this case
at Children=s Assessment Center that
[appellant=s] private part was long?

E.C.:  Yes.

APPELLANT=S COUNSEL:  And did you tell them whenever [appellant]
approached you that it was hard?

E.C.:  Yes.

APPELLANT=S COUNSEL:  And did you also tell someone connected with
this investigation that it had spots on it?

E.C.:  Yes.

APPELLANT=S COUNSEL:  What kind of spots?

E.C.:  Like a spot that you would have on your arm;
like a mosquito bite or something.








APPELLANT=S COUNSEL:  Was it one spot or lots of spots?

E.C.:  More than one spot.

 

D.C. Wells, an investigator in
the child abuse division of the Harris County District Attorney=s office,
testified appellant voluntarily made arrangements with him to have his penis
examined.  An examination of appellant=s
non-erect penis was conducted at Ben Taub Hospital in Houston on July 12, 2004,
and no spots were found on it.

At trial,
appellant focused on E.C.=s lack of
emotional and physical changes following her alleged assaults.  E.C. testified she never mentioned the
incident to anyone, including P.C., her favorite teacher, her school principal,
her father, her aunt, or appellant=s
mother.  Regarding the lack of emotional
changes, Dr. Thompson admitted on cross-examination that although some children
show no behavioral changes, he has also seen children exhibit signs of
depression, anxiety, interpersonal difficulties, lack of trust in interpersonal
relationships, and sexual Aacting
out@ type
behaviors.

As to the
physical damages, E.C. testified she was scolded when she was approximately
four or five years old for being in closets with young boys but had not been
touched in her vagina or her anus before the encounter with appellant.  E.C.=s also
testified although the encounter left her in pain, she never experienced any
bleeding as a result of either the vaginal or anal intercourse.  Additionally, on cross-examination, Dr.
Girardet testified as follows:

APPELLANT=S COUNSEL:  Now, Dr. Girardet, does it stand to reason to
you based upon your experience and number of examinations that you have
conducted thatClet=s assume that a child=s vagina has been
penetrated by a finger or penis for ten times or more that there would be no
positive findings other than just one healed tear . . . .

DR. GIRARDET:  Yes.

APPELLANT=S COUNSEL:  Would repeated penetrations of a child=s vagina show, generally
speaking, any loss of hymen tissue?

DR. GIRARDET:  It can. 
But it doesn=t always.








* *
*

APPELLANT=S COUNSEL:  Well, what would be affected by repeated
penetration by a finger, foreign object, or a penis on a child?

DR. GIRARDET:  Even with repeated trauma, most children show
no physical signs of that trauma on examination.  Most have a normal examination. . . . 

APPELLANT=S COUNSEL:  Does the report reflect whether or not there
was any measurement taking of the child=s vagina?

DR. GIRARDET:  No. . . . [what=s] more important is the
width of the hymenal tissue that=s left.  Is there any or is it gone?  And whether or not there are any tears in the
tissue that=s there.

APPELLANT=S COUNSEL:  Well, let me ask you, in this particular
examination, was the hymen tissue absent or was it still present.

DR. GIRARDET:  It was there.

APPELLANT=S COUNSEL:  And did it show that there had been any loss
of hymen tissue?

DR. GIRARDET:  No.

 

Appellant=s counsel
also highlighted contradictory testimony from the State=s
witnesses.  Although E.C. testified P.C.
purchased medicine for her after E.C. complained of being sore in her vagina,
P.C. testified E.C. never made any such complaints.  P.C. was also unaware of any time appellant
ever struck E.C., despite E.C.=s
testimony to the contrary. Finally, P.C.=s
testimony regarding her relationship with appellant after she was made aware of
the charges stands in stark contrast to appellant=s
testimony.  According to P.C., her only
contact with appellant after the investigation began was a chance encounter
while she was walking E.C. to the bus. 
According to appellant, he and P.C. continued to have sex Aoff and
on@ until
September 2003.

Lastly,
in his cross-examination of E.C., appellant=s counsel
raised the possibility that appellant=s penis
never entered E.C.=s anus:

APPELLANT=S COUNSEL:  Isn=t it true that you don=t know what [appellant]
was trying to put in you, if anything, because you didn=t see it, did you?








E.C.:  No.

APPELLANT=S COUNSEL:  You didn=t see it, did you?

E.C.:  No.

APPELLANT=S COUNSEL:  You never seen a penis before, did you?

E.C.:  No.

APPELLANT=S COUNSEL:  And you never had any male=s private part in to enter
your behind, did you?

E.C.:  No.

APPELLANT=S COUNSEL:  So you don=t know whether it was some
kind of object or finger or what have you, do you?

E.C.:  No.

 

E.C. also testified her contact
with appellant left her sore in her Aprivate
part@ but not
in her Arear
part.@

C.        Is the Evidence
Factually Sufficient to Support Appellant=s
Conviction?

In his
brief, appellant argues, AIt is
against all logic and completely unreasonable to believe a nine year old girl
could be sexually assaulted ten or more times vaginally and anally by a grown
man and leave no medically detectable evidence on her person of such alleged
assault.@  The evidence appellant adduced at trial
crafts an alternative theory of the case in which E.C. fabricated the charges
against appellant because she did not like him. 
Appellant buttresses that argument by highlighting the unlikeliness that
P.C. would maintain a sexual relationship with the man accused of molesting her
daughter.  As a last resort, he contests
the allegation that he had anal intercourse with E.C.  








Viewed in
a light most favorable to the verdict, however, we conclude a rational jury
could have determined beyond a reasonable doubt that appellant committed both
offenses with which he was charged. 
Appellant=s
arguments invite us to reassess the credibility of the witnesses and the proper
weight to be given to the evidence.  This
is beyond our authority when conducting a factual sufficiency review.  The weight to be given to contradictory
testimony is within the sole province of the jury.  Sandoval v. State, 52 S.W.3d 851, 855
(Tex. App.CHouston [1st Dist.] 2001, pet ref=d)
(citing Tex. Code Crim. Proc. Ann. art
36.13 (Vernon Supp. 2005)).  E.C.=s own
testimony, combined with the expert medical testimony, is strong enough to
sustain the finding of guilt beyond a reasonable doubt.  And although appellant presented evidence to
support his alternative theory, it is not so strong so that the State could not
have met its burden of proof. 
Accordingly, we affirm the judgment of the trial court.

 

/s/        Eva M. Guzman

Justice

 

Judgment rendered and Memorandum Opinion filed
January 12, 2006.

Panel consists of Justice Fowler, Edelman, and
Guzman.

Do Not Publish C Tex. R. App. P. 47.2(b).

 











[1]  The trial
court ordered that the sentences run concurrently.





[2]  Initials are
used to protect the privacy of both complainant and her mother.





[3]  Prior to this
testimony, E.C. identified the names of body parts on both male and female
dolls.  She used the term Aprivate part@ to
describe both the penis and the vagina.