Opinion issued December 10, 2009




















In The
Court of Appeals
For The
First District of Texas







NO. 01-08-00911-CR
____________

MICHAEL RAINEY ADAMS, Appellant

V.

THE STATE OF TEXAS, Appellee
 

 
 
On Appeal from the 434th District Court
Fort Bend County, Texas
Trial Court Cause No. 42,944
 

 
 
MEMORANDUM OPINION
          A jury found appellant, Michael Rainey Adams, guilty of the offense of
aggravated sexual assault of a child under the age of fourteen


 and assessed his
punishment at confinement for eleven years. In two issues, appellant contends that
the evidence is legally and factually insufficient to support his conviction. 
          We affirm.
Background
          Jennifer DeLeon, the mother of the complainant, testified that when she was
sixteen years old, she met appellant and they had a sexual relationship. After they
had ended this relationship, she learned that she was pregnant with the complainant.
Jennifer subsequently met Edward DeLeon, whom she married, and he acted as the
complainant’s father. 
          When the complainant was about twelve years old, Jennifer and Edward began
having marital problems. Thereafter, Jennifer and the complainant moved to an
apartment, and Jennifer contacted appellant, told him that she had told the
complainant that he was her father, and suggested that he and the complainant meet. 
Appellant began to visit the complainant frequently, sometimes staying overnight at
the apartment, and, when doing so, he would sleep on the floor in the complainant’s
bedroom. Jennifer would sleep on a couch in the adjacent living room or in her
bedroom. After appellant had spent the night over a period of several months,
Jennifer became concerned because the complainant “became secretive” whenever
appellant telephoned her. Because of this behavior, Jennifer did not allow the
complainant to use the telephone to contact appellant. 
          Edward DeLeon testified that he considered the complainant to be his daughter
and that he was uncomfortable with appellant visiting her. He explained that the
complainant became upset with him after Jennifer had told her that appellant was her
father because the complainant blamed Edward for keeping her away from appellant. 
Although Edward had no “bad blood or cross words” with appellant, he questioned
appellant’s intentions. 
          Edward explained that in May 2005, Jennifer went into a hospital for a surgical
procedure, and while she was in the hospital, the complainant stayed with Edward. 
Edward noticed that the complainant was acting secretive, and he looked through her
possessions to see if he could find anything that might explain her behavior. He
found a note from the complainant’s best friend. The note stated, “Have you told
your mom about you and your dad? Are you ever?” Edward initially thought the
note was about him. He took the complainant, along with the note, to the hospital to
talk with Jennifer. 
          When Jennifer asked the complainant about the meaning of the note, the
complainant became hysterical, cried, and told Jennifer that appellant had touched her
breast sometime earlier in the year. Jennifer and Edward called for emergency
assistance to report the incident. The complainant, who was asthmatic, began
hyperventilating and was taken to the emergency room for an exam.


 
          The complainant testified that she first met appellant just before she started the
sixth grade in 2004. She was upset that Jennifer and Edward had not told her that
appellant was her father. After the complainant and appellant began to spend time
together at Jennifer’s apartment, appellant told her “he loved [her] more than a
daughter.” She explained that, when staying overnight, he would sleep on the floor
in the bedroom, she would sleep on her twin bed, and her mother “always” slept in
her own bedroom. 
          When Jennifer asked her about the note from her friend, the complainant did
not immediately tell her and Edward anything. She told Jennifer later that day some
of what had happened, but she was afraid to tell her all that had occurred. When she
was interviewed two days later at the Children’s Assessment Center (“CAC”), the
complainant admitted that she and appellant had engaged in sexual intercourse on one
occasion. However, she later told her counselor and the prosecutor that she and
appellant had sexual intercourse “probably more than ten” times because she believed
their conversations would be confidential. 
          The complainant further testified that during one of his visits, appellant
touched her breast while they were lying on her bedroom floor watching a movie. 
About two weeks later, appellant engaged in sexual intercourse with the complainant
for the first time when she and appellant were again in her bedroom. She explained
that after appellant removed his jeans and boxer shorts, he then removed her shorts
and panties and had sexual intercourse with her. The complainant noted that,
generally, Jennifer was home during the ten times that appellant had sex with her and
that the sequence of events was generally the same. She never cried out because she
was afraid of getting “in trouble” and getting appellant “in trouble.” 
          On cross-examination, the complainant admitted that she had “rehearsed” her
testimony with the prosecutor and her counselor at least four times, but she denied
telling appellant that she had made up “the story” because she had “no choice.” The
complainant indicated that she could hear Jennifer talking on the telephone nearby
“every time” that appellant had sex with her when Jennifer was home. She admitted
that she could not remember any details of the other nine incidents, but explained that
they all occurred in her bedroom, on her twin bed, in the same position, with both of
them wearing similar clothing as during the first incident.
          Dr. R. Girardet, an investigator with the Houston CAC, testified that she
reviewed the complainant’s medical records, and they revealed that the complainant’s
hymen was still intact. Dr. Girardet explained that it would not be unusual for the
hymen to remain intact even after ten penetrations and that just because the hymen
was unruptured did not mean there was no penetration. 
          Dr. Girardet noted that, in her experience, sometimes children do not tell all
that has happened to them immediately, and it can take “as long as months to years”
for victims to tell what occurred. She opined that because the complainant was
assaulted more than two months before the exam, she would not have expected to see
information in the medical records about DNA, bruising, or other injuries. Dr.
Girardet explained that from medical research, “the majority of the children who
complain they’ve been sexually assaulted have normal medical exams,” that is, the
vast majority show no findings of sexual assault, because that area of the body heals
quickly. 
          Phil Packwood, the complainant’s counselor, testified that he had sessions with
her about once every other week starting in 2005, and she, over the course of one
year, told him about the sexual abuse. He explained that such “delayed disclosure”
was common in child sexual abuse cases because children do not generally know
what to do after the abuse. The complainant never told Packwood that sexual abuse
had not occurred and she had been consistent in describing the sexual assaults. On
cross-examination Packwood admitted that he had urged the complainant “to practice
her story in front of a mirror.” He also noted that the complainant had written him a
letter about an event in which she stated that appellant had kept his boxer shorts on.
          Mary Anne Reinke, a CAC forensic psychologist, testified that during her
interview of the complainant, the complainant stated that, while she and appellant
were lying on her bed, appellant had touched her breast under her shirt and her bra
and that sexual intercourse had followed in which appellant “put his penis in her
vagina.” She told Reinke that sexual intercourse occurred “one time.” 
          Rosenberg Police Officer K. Raines testified that he recorded an interview of
appellant in which appellant stated that he used Ambien to help him sleep and that,
if he had sexual intercourse with the complainant, it would not have been intentional
and he would not be able to remember it.
          Appellant testified that when Jennifer called him to invite him to meet the
complainant, he met her that same day. Appellant, who was concerned about
Edward’s attitude towards his having a relationship with the complainant, stated that
Edward had threatened him by saying “however long it took that he was going to
make me pay for fucking with his family.” Appellant explained that he spent nights
at Jennifer’s apartment because he wanted to get to know the complainant. He did
not bring the complainant to his home because he was having marital problems with
his wife at that time. 
          Appellant further testified that when he spent the night at Jennifer’s apartment,
he slept on the floor in the complainant’s bedroom. He stated that the complainant’s
bed was up against the wall that divided the living room from her bedroom and the
couch in the living room was along that same wall. Appellant stated that Jennifer
“always” slept on the couch when he slept at the apartment and that it would not have
been difficult for someone lying on the couch to hear if people were moving around
in the complainant’s bedroom. Every time he stayed overnight, Jennifer would come
into the complainant’s bedroom, sometimes more than once each night, to check on
the complainant. 
          On cross-examination, appellant admitted that he was twenty-one years old
when he began having sexual intercourse with Jennifer, who was sixteen years old at
the time. He also admitted that Edward had never threatened him in front of anyone
else.
Sufficiency of the Evidence
          In his first and second issues, appellant argues that the evidence is legally and
factually “insufficient to prove that appellant was guilty of the offense of aggravated
sexual assault of a child” because “the lack of physical evidence indicates he did not
commit the offense” and the complainant’s “lack of memory regarding certain facts,
inconsistencies in her story, and her motive to lie, due to pressure to testify against
the Appellant placed upon [the complainant] by her family . . . to cover up the
extraneous offenses or threats” made by Edward against appellant.
          We review the legal sufficiency of the evidence by considering all of the
evidence in the light most favorable to the verdict to determine whether any rational
trier of fact could have found the essential elements of the offense beyond a
reasonable doubt. Williams v. State, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007)
(citing Jackson v. Virginia, 443 U.S. 307, 318–19, 99 S. Ct. 2781, 2788–89 (1979)). 
In doing so, we give deference to the responsibility of the fact-finder to fairly resolve
conflicts in testimony, to weigh evidence, and to draw reasonable inferences from the
facts. Id. However, our duty requires us to “ensure that the evidence presented
actually supports a conclusion that the defendant committed” the criminal offense of
which he is accused. Id. 
          In a factual sufficiency review, we view all the evidence in a neutral light, both
for and against the finding, and set aside the verdict if the proof of guilt is so
obviously weak as to undermine confidence in the jury’s determination, i.e., that the
verdict seems “clearly wrong and manifestly unjust,” or the proof of guilt, although
legally sufficient, is nevertheless against the great weight and preponderance of the
evidence. Watson v. State, 204 S.W.3d 404, 414–15 (Tex. Crim. App. 2006). We
note that a jury is in the best position to evaluate the credibility of witnesses, and we
afford due deference to the jury’s determinations. Marshall v. State, 210 S.W.3d 618,
625 (Tex. Crim. App. 2006). Although we should always be “mindful” that a jury is
in the best position to decide the facts and that we should not order a new trial simply
because we disagree with the verdict, it is “the very nature of a factual-sufficiency
review that . . . authorizes an appellate court, albeit to a very limited degree, to act in
the capacity of a so-called ‘thirteenth juror.’” Watson, 204 S.W.3d at 416–17. Thus,
when an appellate court is “able to say, with some objective basis in the record, that
the great weight and preponderance of the (albeit legally sufficient) evidence
contradicts the jury’s verdict[,] . . . it is justified in exercising its appellate fact
jurisdiction to order a new trial.” Id. at 417.
          In support of his legal sufficiency challenge, appellant emphasizes that there
is “no medical evidence of a sexual assault, there [is] no physical evidence presented
identifying Appellant as the perpetrator, and the record . . . shows multiple issues
regarding the credibility and reliability of [the complainant] as a witness.” He asserts
that the complainant’s testimony is “ambiguous” and “contradictory; the complainant
told different versions of events to different persons; and the complainant never told
her mother “anything about ten instances” and told her only that appellant had
touched the complainant’s breast. She only told the interviewers about the touching
of her breast. Appellant further asserts that “the uncorroborated testimony of an
alleged sexual assault victim under fourteen years of age, alone should be insufficient
to warrant a conviction.” 
          First, we note that a conviction for the sexual assault of a child is “supportable
on the uncorroborated testimony of the victim of the sexual offense if the victim
informed any person, other than the defendant, of the alleged offense within one year
after the date on which the offense is alleged to have occurred.” Tex. Code Crim.
Proc. Ann. art. 38.07 (Vernon 2005). The requirement that the victim inform
another person of an alleged offense does not apply “if at the time of the alleged
offense the victim was a person 17 years of age or younger.” Id.; see Sandoval v.
State, 52 S.W.3d 851, 854 n.1 (Tex. App.—Houston [1st Dist.] 2001, pet. ref’d). 
Thus, the complainant’s testimony that appellant had sexual intercourse with her at
least ten times is sufficient standing alone to support appellant’s conviction. Viewing
all of the evidence in the light most favorable to the verdict, we note that in addition
to the complainant’s testimony, the mother of the complainant testified that the
complainant told her “more” than touching had occurred. The complainant’s
counselor, Packwood, testified that over the course of one year, the complainant told
him what had happened and that she never stated that sexual intercourse did not
happen. Dr. Girardet testified that she did not expect to find evidence of a sexual
assault that had occurred more than two months prior to the complainant’s
gynecological exam. She also testified that the fact that the complainant’s hymen was
intact did not mean that no penetration had occurred and that the vast majority of
child sexual assault victims do not present physical evidence of the assault in their
physical examinations. Appellant testified that, if a sexual assault occurred, he
believed it would have been caused by his ingestion of Ambien, which may have
caused memory loss. 
          Given this evidence, a reasonable trier of fact could have concluded that
appellant sexually assaulted the complainant. Accordingly, we hold that the evidence
is legally sufficient to support the jury’s finding that appellant was guilty of the
offense of sexual assault of a child under the age of fourteen.
          In support of his factual sufficiency challenge, appellant emphasizes that the
complainant’s “testimony is best described as ambiguous responses about the
allegations.” He asserts that the complainant changed her version of events in that
she first told Reinke and Packwood that sexual intercourse with appellant had
occurred only once and later stated that she told Packwood that there were ten
instances of sexual intercourse with appellant. Appellant notes that when the
complainant was interviewed, she did not say anything about acts other than the
touching of her breast. He asserts that the complainant practiced her testimony with
the prosecutor four times and had a motive to lie to cover up threats made by Edward
DeLeon against appellant for interfering with his family. Appellant again explains
that there is no physical evidence or other corroborating evidence that sexual
intercourse had occurred. Appellant asserts that he presented “evidence that
contradicted the ability of these allegations to have occurred,” but he does not discuss
in his brief what that evidence is. 
          Viewing the evidence in a neutral light, it is true that the complainant told
different versions of events to different persons. The complainant told her mother
only that appellant had touched her breast, but, two days later, she told Reinke during
the CAC interview that appellant had sexual intercourse with her. She later told the
prosecutor and Packwood that sexual intercourse had occurred ten times. However,
both Packwood and Reinke explained that it was not unusual for sexual assault
victims to display delayed disclosure and gradual disclosure over an extended period
of time after a sexual assault. The complainant did assert that all of the incidents of
sexual intercourse occurred in the her bedroom while her door was open. She
conceded that if she could hear talking in another room from her bedroom, someone
in the other room could hear what was happening in her room. However, the
complainant also testified that she never cried out during any of the incidents and her
mother always slept in her bedroom. Appellant did testify that the complainant’s
mother always slept on the couch when he stayed over, but the mother testified that
she sometimes slept in her bedroom. Also, although appellant testified that Edward
DeLeon threatened him for interfering with his family, DeLeon denied making such
a threat, and appellant conceded that DeLeon had never threatened him in front of
another person. Moreover, although appellant asserts that the complainant had a
motive to lie, Packwood testified that her story remained consistent and that she never
told him that sexual intercourse did not occur. Finally, again, we note that the
uncorroborated testimony of a sexual abuse victim under the age of fourteen is
sufficient to sustain a conviction. See Tex. Code Crim. Proc. Ann. art. 38.07. We
conclude that the verdict is not “clearly wrong and manifestly unjust” and the proof
of guilt is not against the great weight and preponderance of the evidence. See
Watson, 204 S.W.3d at 414–15. Accordingly, we hold that the evidence is factually
sufficient to support the jury’s finding that appellant was guilty of the offense of
sexual assault of a child under the age of fourteen. 
          We overrule appellant’s first and second issues.
 

Conclusion
          We affirm the judgment of the trial court.
 




                                                                        Terry Jennings 
                                                                        Justice

Panel consists of Justices Jennings, Higley, and Sharp.

Do not publish. Tex. R. App. P. 47.2(b).