Affirmed as Modified and Memorandum Opinion filed January 10, 2008








 

Affirmed
as Modified and Memorandum Opinion
filed January 10, 2008.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-00097-CR

 NO. 14-07-00098-CR

 

GERARDO ESQUIVEL ARANA, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 177th District
Court

Harris County, Texas

Trial Court Cause Nos.
1064733 & 1048865

 



 

M E M O R A N D U M   O P I N I O N








A jury found appellant, Gerardo E. Arana, guilty of
criminally negligent homicide and failure to stop and render assistance.  See
Tex. Penal Code Ann. ' 19.05(a) (Vernon 2003); Tex. Transp. Code
Ann ' 550.021 (Vernon
1999).  The jury assessed punishment at two years= confinement for
the criminally negligent homicide conviction and four years= confinement for
the failure to stop and render assistance conviction.  In two issues, appellant
argues (1) the evidence is legally and factually insufficient to sustain the
conviction of criminally negligent homicide and (2) the trial court erred when
it overruled one objection and refused to grant a mistrial on another objection
to allegedly improper jury arguments by the prosecutor.  

Additionally, both appellant and the State point out a
mistake in the judgment and request that it be modified.  The written Judgment
of Conviction by Jury shows appellant was convicted of manslaughter; however,
both the jury=s verdict and the court=s oral
pronouncement of the verdict indicate the jury found appellant guilty of the
lesser-included offense of criminally negligent homicide.  It is apparent
someone made a typographical error on the judgment form.  Appellant was only
convicted of criminally negligent homicide; accordingly, we modify the judgment
of the trial court in cause number 1064733 to reflect that appellant was
convicted of criminally negligent homicide.  See Tex. R. App. P.
43.2(b); Taylor v. State, 131 S.W.3d 497, 500 (Tex. Crim. App. 2004)
(stating when there is a conflict between the oral pronouncement of sentence
and the sentence in the written judgment, the oral pronouncement controls).  

We affirm the judgment of criminally negligent homicide in
trial court cause number 1064733 as modified, and we affirm the judgment of
failure to stop and render assistance in trial court cause number 1048865.  

Factual and Procedural Background








On the morning of December 1, 2005, appellant and two
co-workers were traveling northbound on Gosling Road.  Cody Brill, a
sixteen-year-old high school student, was traveling southbound on his
motorcycle on Gosling Road at approximately the same time.  When appellant
reached the corner of Gosling and Dovershire, he made a left-hand turn and
collided with Brill.  Brill=s motorcycle struck the front of appellant=s van, throwing
Brill into a nearby ditch.  Instead of stopping, appellant completed his
left-hand turn and continued driving down Dovershire.  Beverly Matthews, an
eyewitness who was driving behind appellant=s van when the
accident occurred, followed appellant and informed him he needed to return to
the accident scene.  Appellant complied and returned to the scene.  The
emergency medical services arrived and pronounced Brill dead on the scene. 
Brill died from multiple blunt force injuries.

During trial, the State called Matthews to testify as an
eyewitness.  Matthews testified she was traveling northbound on Gosling Road
behind appellant=s van at approximately 7:00 a.m. on
December 1, 2005.  Matthews testified both her and the van were traveling at
approximately forty-five miles per hour, and as the van approached the
intersection of Gosling and Dovershire, the van pulled into the oncoming lane
of traffic.  Matthews testified she became concerned because she noticed a
motorcycle coming in the opposite direction.  Matthews testified the van hit
the motorcycle, and the next thing she saw was the motorcycle slide out from
underneath the van.  On cross-examination, however, Matthews admitted she did
not actually see the van hit the motorcycle but assumed that is what happened
after she saw the motorcycle slide out from underneath the van.

Matthews also testified she never saw the van=s turn signal or
brake lights.  She further testified she did not see the driver of the
motorcycle until she turned the corner and noticed he was lying in the ditch. 
Matthews also testified the motorcycle was not driving erraticly, did not
appear to be speeding, and did not have time to take any kind of evasive action
before the impact.  She testified nothing about the motorcycle=s driving led her
to believe the accident was the motorcycle driver=s fault.

According to Matthews, about the time she turned the
corner, two boys who were traveling behind her got out of their car and jumped
over the guardrail to help Brill.  Matthews testified she told the boys to stay
with Brill and she would be right back.  Matthews then followed the van because
it did not stop after the collision occurred.  Matthews testified once the van
came to a stop in a cul-de-sac approximately one mile from the accident, she
told appellant Ayou need to go back to where you just came
from.@  Matthews
testified appellant told her AI=m going, I=m going,@ and he turned
around and returned to the scene.








After arriving back at the scene, Matthews made a written
statement for the police.  In her written statement, Matthews did not mention
the van crossed the double-yellow line or entered the intersection early. 
During trial, however, she testified she orally told the police the van crossed
the double-yellow lines and pulled into oncoming traffic.  Additionally,
Matthews participated in a ride-along with one of the deputies and taped a
re-enactment of how the van was driving on the day of the accident.  In the
tape re-enactment, appellant showed the deputy how the van crossed the
double-yellow line and pulled into oncoming traffic.  The tape was played for
the jury.

Deputy Steven Drake of the Harris County Constable=s Office testified
he arrived at the site and helped map the scene.  Drake testified he later
prepared the accident report, which he amended two or three times.  Drake
testified he amended the report based on new evidence and a witness statement. 
Drake also testified he turned over his drawings, coordinates, and measurements
taken at the scene to the accident reconstructionist.

Lieutenant Michael Young of the Harris County Constable=s Office testified
he arrived at the scene, spoke with witnesses, and collected data.  Young also
testified to his qualifications as an accident reconstructionist.  Based on his
investigation, Young testified there was no pre-impact braking by either vehicle
and no evasive action taken by either vehicle.  Young also testified appellant
left his legal lane of traffic and began turning approximately fifty-two feet
before he legally could do so.  Young testified as to an approximate point of
impact based on the beginning of the debris path; however, he did admit he
could not give an exact location for the point of impact.  Young stated A[t]he point of
impact is somewhere south of there, some unknown distance south of there.  It
will be close, but we don=t have an exact, scientifically provable
point of impact where I could go out and drive a nail in the street.@








In addition, Young testified the van was traveling at a
speed of forty-five miles per hour, but he could not estimate the speed of the
motorcycle.  Young, however, did testify there were no indications the
motorcycle left its legal lane of traffic.  Young concluded the accident was
caused by appellant leaving his legal lane of traffic, crossing the
double-yellow lines into oncoming traffic, and striking Brill causing his
death.  On cross-examination, Young admitted people often have trouble judging
the distance of a motorcycle, and he admitted Gosling road curved and changed
in elevation at the spot the accident occurred.

Clemente Arana, appellant=s brother, and
Pedro Hernandez testified on behalf of appellant.  Both men were riding in the
van with appellant when the accident occurred.  Arana and Hernandez both
testified appellant was not speeding, he came to a complete stop before
turning, and he used his turn signal.  Arana and Hernandez also testified they
could see the motorcycle coming and it was traveling at a high rate of speed. 
According to Arana and Hernandez, appellant never left his legal lane of
traffic.  They both testified appellant did not attempt to turn in front of the
motorcycle. 

       
Appellant was charged with manslaughter and failure to stop and render
assistance.  A jury found appellant guilty of both the lesser-included offense
of criminally negligent homicide, and failure to stop and render assistance. 
The jury sentenced appellant to two years= confinement  in
Texas Department of Criminal Justice, State Jail Division for the criminally
negligent homicide conviction, and four years= confinement in
the Texas Department of Criminal Justice, Institutional Division for the
failure to stop and render assistance conviction.  Appellant=s sentences are to
run concurrently.  This appeal followed.

Discussion

A.      Is the
Evidence Legally and Factually Sufficient?

In his first issue, appellant argues the evidence is
legally and factually insufficient to support his conviction of criminally
negligent homicide.  Specifically, appellant argues the evidence is
insufficient because the record shows appellant was driving at the posted speed

 limit,
appellant did not cross into the oncoming lane of traffic prior to the
accident, and Brill was operating his motorcycle at an unsafe speed prior to
the accident.     








1.       Standard
of Review

In a
legal sufficiency review, we view all the evidence in the light most favorable
to the verdict and determine whether any rational trier of fact could have
found the essential elements of the crime beyond a reasonable doubt.  Jackson
v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560
(1979); Salinas v. State, 163 S.W.3d 734, 737 (Tex. Crim. App. 2005). 
The jury, as the sole judge of the credibility of the witnesses, is free to
believe or disbelieve all or part of a witness=s testimony. See Moreno v. State,
755 S.W.2d 866, 867 (Tex. Crim. App. 1988).  We do not engage in a second
evaluation of the weight and credibility of the evidence, but only ensure the
jury reached a rational decision.  Muniz v. State, 851 S.W.2d 238, 246
(Tex. Crim. App. 1993); Harris v. State, 164 S.W.3d 775, 784 (Tex. App.CHouston [14th Dist.] 2005, pet. ref=d).

In a
factual sufficiency review, we consider all the evidence in a neutral light.  Prible
v. State, 175 S.W.3d 724, 730B31 (Tex. Crim. App. 2005).  The
evidence may be factually insufficient in two ways.  Id. at 731.
 First, when considered by itself, evidence supporting the verdict may be
so weak the verdict is clearly wrong and manifestly unjust.  Id.  Second,
where the evidence both supports and contradicts the verdict, the contrary
evidence may be strong enough that the beyond-a-reasonable-doubt standard could
not have been met.  Id.  In conducting a factual sufficiency review, we
must employ appropriate deference so that we do not substitute our judgment for
that of the fact finder.  Jones v. State, 944 S.W.2d 642, 648 (Tex.
Crim. App. 1996).  Our analysis must consider the evidence appellant claims is
most important in allegedly undermining the jury=s verdict.  Sims v. State, 99
S.W.3d 600, 603 (Tex. Crim. App. 2003). 

2.         Applicable Law








A person
commits the offense of criminally negligent homicide if he causes the death of
an individual by criminal negligence.  Tex. Penal Code Ann. ' 19.05(a).  A person acts with
criminal negligence, or is criminally negligent, with respect to circumstances
surrounding his conduct or the result of his conduct when he ought to be aware
of a substantial and unjustifiable risk that the circumstances exist or the
result will occur.  Id. ' 6.03(d) (Vernon 2003).  The risk must be of such a nature
and degree that the failure to perceive it constitutes a gross deviation from
the standard of care that an ordinary person would exercise under all the
circumstances as viewed from the actor=s standpoint.  Id.  

The
charge in this case instructed the jury it could convict appellant of
criminally negligent homicide if it found he caused the death of Cody Brill Aby driving into a lane of on-coming
traffic and striking a motorcycle driven by Cody Brill.@

3.         Analysis

Appellant
argues the evidence is insufficient in this case for the following reasons: 
(1) the State=s accident reconstructionist expert, Young, was unable to pinpoint an
exact point of impact; (2) Young testified appellant=s vehicle was traveling at the posted
speed limit at the time of the accident; (3) Young could not make a reliable
determination of the motorcycle=s speed at the time of the accident; (4) Matthews= original written statement to the
police did not indicate appellant crossed into oncoming traffic; and (5)
appellant=s witnesses testified appellant remained in his lane and the motorcycle
was traveling at a high rate of speed.

At
trial, however, the evidence also showed Young was able to estimate a point of
impact and admitted it was not an exact science.  Young also estimated
appellant left his legal lane of traffic and began turning approximately
fifty-two feet before he legally was allowed to do so.  Young testified, in his expert
opinion, the accident was caused by appellant leaving his legal lane of travel,
crossing the double-yellow lines into oncoming traffic, and striking Brill
causing his death. 








Matthews testified at trial she was following appellant,
and as the van approached the intersection of Gosling and Dovershire, the van
pulled into the oncoming lane of traffic and collided with the motorcycle. 
While Matthews admitted her original written statement did not mention the van
crossing into oncoming traffic, she also testified she orally told the police
that information on the day of the accident.  In addition, Matthews
participated in a video-taped re-enactment which was shown to the jury. 
Matthews also testified she never saw the van=s turn signal or
brake lights.  She testified the motorcycle was not driving erraticly, did not
appear to be speeding, and did not have time to take any kind of evasive action
before the impact.  Matthews testified nothing about the motorcycle=s driving led her
to believe the accident was the motorcycle driver=s fault.

As the sole judge of the credibility of the witnesses and
the weight to be given to their testimony, the jury was free to believe the
testimony of Matthews and Young, despite the conflicting testimony offered by
appellant=s witnesses, Arana and Hernandez.  See Moreno,
755 S.W.2d at 867.  Matthews=s and Young=s testimony
provided evidence that appellant
drove into a lane of oncoming traffic and struck the motorcycle driven by
Brill.  

Viewing all the evidence in the light most favorable to the
verdict, we conclude any rational trier of fact could have found beyond a
reasonable doubt appellant caused the death of an individual by criminal negligence.  See Salinas, 163 S.W.3d at 737.   Accordingly, the
evidence is legally sufficient.  After reviewing all the evidence in a neutral
light, we hold the evidence supporting the verdict is not so weak that the
verdict is clearly wrong and manifestly unjust, nor is the contrary evidence so
strong that the beyond-a-reasonable-doubt standard could not have been met.  See
Prible, 175 S.W.3d at 730B31.  Accordingly, the evidence is
factually sufficient to prove appellant caused the death of an individual by
criminal negligence.  Appellant=s first issue is overruled.

B.      Was
Appellant Harmed by Allegedly Improper Jury Arguments Made by the Prosecutor?

In his second issue, appellant complains about two
statements made by the prosecutor during her closing argument.  Appellant
argues the statements were improper jury arguments and were so prejudicial
appellant was harmed.








1.       Standard
of Review

Proper jury
argument generally must encompass one of the following areas: (1) a summation
of the evidence; (2) a reasonable deduction from the evidence; (3) a response
to an opponent=s argument; or (4) a plea for law enforcement.  Guidry
v. State, 9 S.W.3d 133, 154 (Tex. Crim. App. 1999); Azeez v. State,
203 S.W.3d 456, 469 (Tex. App.CHouston [14th Dist.] 2006, pet. granted). 
When reviewing alleged error in a jury
argument, the appellate court must analyze the statement
in light of the entire argument and not on isolated
instances.  Edwards v. State, 97 S.W.3d 279, 286 (Tex. App.CHouston [14th
Dist.] 2003, pet. ref=d) (citing Drew v. State, 743
S.W.2d 207, 220 (Tex. Crim. App. 1987)).  Even when the prosecutor mentions
facts outside the record during argument, an instruction to disregard will
generally cure the error.  Martinez v. State, 17 S.W.3d 677, 691 (Tex.
Crim. App. 2000).            2.       Analysis

Appellant=s first complaint of improper jury
argument is that the State struck at him over the defense counsel=s shoulders and
accused the defense counsel of acting unfairly and unjustly.  The relevant part
of the record reads as follows:

I want to talk to you for just a second about Sergeant Young[1]. 
Is he arrogant?  Maybe.  He=s an engineer.  Imagine how frustrated you would be if you were the
expert in your field.  You knew what there was to know about accident
reconstruction.  You had been doing it for years and years and years.  You had
done it both as a police officer and as a civilian.  You=ve done the math.  You have done
the calculations.  You have shown your work.  You=ve created a big binder.  And then somebody who has
no experience B

MR. MUNIER:        Objection.  That=s outside the record, Judge.

THE COURT:        Sustained.

MR. MUNIER         I ask the jury disregard
that, Judge.

THE COURT:        Please disregard the last
statement made by the prosecutor.








MS. HARVEY:        And then some lawyer comes
in B

MR. MUNIER:        Objection as to the attack
of counsel over the back of counsel.

THE COURT:        Overruled

MS. HARVEY:        Some lawyer comes in and
starts nitpicking and playing Monday morning quarterback to an investigation
that has taken months to put together.  It=s taken hours of calculations.  It=s been careful measurements. 
Imagine how frustrated you would be as an expert.

The
State argues the prosecutor never accused defense counsel of acting unfairly or
unjustly, but rather, she was responding to an argument previously made by the
defense.  In the defense=s closing argument, appellant=s attorney
referred to Young as arrogant and argued he was bamboozling the jury.

Generally, a remark that strikes at the defendant through
his counsel is improper.  Coble v. State, 871 S.W.2d 192, 205 (Tex.
Crim. App. 1993).  A prosecutor runs a risk of improperly striking a defendant
over the shoulder of counsel when the argument personally impugns opposing
counsel=s character.  Mosley
v. State, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998).  Although defense
counsel is protected against unwarranted attacks, this does not create a
sanctuary to which defense counsel may retreat with immunity and thereby deny
the prosecutor the right to reply to counsel=s argument.  Stokes
v. State, 506 S.W.2d 860, 864 (Tex. Crim. App. 1974).        








In this case, we believe the prosecutor=s argument was a
direct response to defense counsel=s argument that
Young was arrogant and bamboozling the jury.  The prosecutor was not impugning
the defense counsel=s character or suggesting he acted
unfairly or unjustly.  Instead, the prosecutor was explaining why their expert
witness may have appeared arrogant.  Accordingly, we hold the prosecutor=s argument was not
an improper jury argument and the court did not err in overruling the
objection.  See Sandoval v. State, 52 S.W.3d 851, 858 (Tex. App.CHouston [1st
Dist.] 2001, pet. ref=d) (holding it was permissible for the
prosecutor to respond to defense counsel=s suggestion that
the prosecution manipulated the testimony of a witness); Lange v. State,
57 S.W.3d 458, 467 (Tex. App.CAmarillo 2001, pet. ref=d) (holding the
prosecutor=s reference to having taken an oath to uphold justice
was a permissible response to defense counsel=s suggestion that
the prosecution improperly coached witnesses).

Appellant=s second complaint of improper jury
argument is that the prosecutor made statements outside the record.  The relevant
part of the record reads as follows:

When Beverly Matthews sees the accident, she told
you that there were two boys behind her and they jumped over the guard rail to
go down to Cody=s aid.  Defense counsel made a big
deal about it.  AWhere are they?  Where are they?@  You know where they are?  At
least one of them is in therapy.

MR. MUNIER:        Objection.  It=s outside the record, and I ask for
an instruction to disregard.

THE COURT:        Sustained.  Disregard the
last statement made by the prosecutor. 

MR. MUNIER:        Move for an instruction
for mistrial.

THE COURT:        Denied  

The
State argues this statement was also a response to a statement made by defense
counsel.  During his closing argument, defense counsel argued to the jury how
important it was the State failed to call the two boys at the scene to
testify.  He suggested the State did not call the boys because they would Atell the truth.@  Defense counsel
stated:

Do we hear from these two young
men?  Did [the prosecutor] call them?  Where are they?  Was she afraid that
they were going to tell the truth?  She has got to call them.  She didn=t call them.  That=s her burden to
prove beyond a reasonable doubt that we are on the other lane.  You didn=t hear from either
one of them, and they are there driving right behind Ms. Matthews.  That=s critical.  That=s very important. 
Think about that.








Once again, we believe the statement made by the prosecutor
regarding one of the boys being in therapy is a response to defense counsel=s argument. 
Defense counsel suggested the State did not call the boys to testify because it
was afraid the boys would tell a different side of the story.  The prosecutor
responded to this suggestion by attempting to explain why the boys did not
testify.  

Furthermore, even assuming the prosecutor=s arguments were
improper, the trial judge sustained the objection and instructed the jury to
disregard the statement.  The prosecutor=s arguments were
not so extreme as to render ineffective an instruction to disregard.  See
Sandoval, 52 S.W.3d at 858.  Accordingly, the trial judge did not err in
refusing a mistrial.  Appellant=s second issue is overruled.

Conclusion

Having determined the Judgment of Conviction by Jury in
trial court cause number 1064733 incorrectly states appellant was convicted of
manslaughter, we modify the judgment in that case to reflect the jury=s verdict and the
trial court=s oral pronouncement that appellant was convicted of
criminally negligent homicide.  Having overruled appellant=s other two points
of error, we affirm the judgment of criminally negligent homicide in trial
court cause number 1064733 as modified, and we affirm the judgment of failure
to stop and render assistance in trial court cause number 1048865.  

                                                              

 

 

 

/s/      John S. Anderson

Justice

 

 

 

 

Judgment rendered
and Memorandum Opinion filed January 10, 2007.

Panel consists of
Chief Justice Hedges, Justice Anderson, and Senior Justice Price.*

Do Not Publish C Tex. R. App. P. 47.2(b).    









[1]  At the time of the accident, Young was a Sergeant,
but at the time of trial, he had been promoted to Lieutenant.





*  Senior Justice Frank C. Price sitting by assignment.