**Affirm and Opinion Filed July 10, 2013**



In The

**Court of Appeals**

**Fifth District of Texas at Dallas**

## No. 05-11-01310-CR

**CANDELO PEREZ TORRES, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 204th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F08-24517-Q**

## MEMORANDUM OPINION

Before Justices Bridges, Lang, and Richter[1]
Opinion by Justice Bridges

Candelo Torres appeals his conviction for aggravated sexual assault of a child younger than 14 years of age. After a bench trial, the trial judge found appellant guilty and sentenced him to eight years' confinement and a fine of $3000. In two issues, appellant argues he received ineffective assistance of counsel, and the evidence is insufficient to support his conviction. We affirm the trial court's judgment.

T.G. testified she was nine years old when appellant moved in with her brother, R.G., and her mother, Gaye. Appellant and Gaye got married sometime thereafter, and a boy and a girl, E.T. and C.T., were born out of that marriage. T.G. recalled that appellant and her mother were

---

[1] The Hon. Martin Richter, Justice, Assigned

married for four or five years and that appellant no longer lived with them when she was fourteen years old.

T.G. testified that in August of 2000, when she was eleven years old, her mother rented a bounce house for her and R.G.'s joint birthday party. T.G. went outside to the bounce house with blankets and pillows and told R.G. to go get his own, and they were going to sleep in the bounce house that night. Appellant went outside to the bounce house and was jumping around with T.G., but when she lay down under her covers appellant got under the covers too and started "spooning" her. When appellant was spooning T.G., he started putting his hands all over her legs and feeling her up through her shorts and underwear to touch her vagina skin to skin. T.G. testified appellant put his fingers "all over [her] private area, like going from my clitoris down to my vagina hole."

T.G. testified the bounce house incident was not the first time appellant touched her vagina. T.G. testified she was ten years old the first time appellant touched her inappropriately in the swimming pool in the backyard. Appellant got in the pool with T.G. and R.G. and swam up underneath the water in between T.G.'s legs. He then pulled T.G.'s bikini bottom aside and "smashes his mouth all in [her] vagina." T.G. "freaked out" and "got out of there" and went inside the house and went to bed.

T.G. testified a third incident occurred when she was in sixth grade. Appellant came into her room and started tugging at her pants and pulling them down. T.G. woke her mother up and told her appellant had touched her and tried to pull her pants down that morning. Her mother started screaming and crying and called her uncle so they could confront appellant, who denied anything had happened. Someone asked T.G. if she could have been dreaming, and she said, "Yeah, I was just dreaming, I guess."

When T.G. was eighteen and no longer living at her mother's house she made an outcry to her mother. She made this outcry on finding out that appellant had filed for sole custody of E.T.

and C.T. because she was afraid appellant might sexually abuse them too. Her mother then encouraged her to "say something." T.G. and R.G. went to the Garland police department where T.G. filed a report.

R.G. testified his mother usually rented a bounce house for every birthday party. He was also "pretty sure" that there was a bounce house for his and T.G.'s joint birthday party in August 2000. He testified he went into the bounce house with T.G. that night after the party was over. R.G. said it would not have been rare for appellant to be in the bounce house with T.G. R.G. testified there was a pool in the back yard that was fifteen to twenty feet in diameter and was deep enough for someone to submerge themselves in and come back up. R.G. testified T.G. lived in her mother's house while appellant was living there and stayed there during the week because of school. However, on the weekends T.G. usually went to her grandmother's house. He also testified his relationship with appellant toward the end "wasn't that great." R.G. said appellant put his finger on his rectum multiple times, would pull down his pants and make fun of the size of his penis, would "put his finger up [R.G.'s] butt," and one time appellant showed R.G. his "body parts." R.G. told his mother about these incidents, and it caused his mother and appellant to get into a "huge argument."

Appellant testified in his own defense. He denied ever touching T.G. inappropriately. He denied ever putting his fingers in her vagina in the bounce house. Appellant testified that T.G. lived with her grandparents almost the whole time he was with Gaye and that it was rare for T.G. to spend the night or even live in the household. He also denied that there was ever a bounce house on the property and testified there was only a trampoline. Appellant testified that there was a small swimming pool in the backyard, but T.G. never swam in it because she did not live in the house. He said it would have been impossible for him to swim underneath a nine or ten year old child in the pool. Appellant denied ever going into T.G.'s bedroom when she was there. Appellant testified he got along with R.G. well and denied ever flicking his penis at him or

pulling down his pants and making fun of the size of his penis. On cross-examination appellant admitted T.G. got in the swimming pool "like two times." He maintained that T.G. was lying about all three specific instances that she described. At first appellant testified that the first time he heard any allegations by T.G. of him touching her inappropriately was in 2008 but then admitted Gaye and Uncle Roy had confronted him once before. At the conclusion of the evidence, the trial judge found appellant guilty, and this appeal followed.

In his first issue, appellant argues the evidence is insufficient to support his conviction. Specifically, appellant argues T.G.'s testimony does not establish vaginal penetration beyond a reasonable doubt. Further, appellant complains of the belated outcry and argues that T.G. was motivated to outcry because he filed for sole custody of E.T. and C.T. We disagree.

The State initially offered appellant a plea bargain agreement which he rejected and stated he wanted to plead not guilty. Appellant's counsel admonished him that, because he was a resident and not a citizen, a conviction could result in his being deported. On the day of trial, however, appellant entered a plea of no contest and waived a jury.

We do not apply the *Jackson* "rationality" test in reviewing the sufficiency of the evidence when a defendant voluntarily enters a plea of guilty or nolo contendere. *See Ex parte Martin*, 747 S.W.2d 789, 791 (Tex. Crim. App. 1988). When a defendant pleads guilty or nolo contendere, the State must introduce sufficient evidence into the record to support the plea and show the defendant is guilty, and said evidence shall be accepted by the court as the basis for its judgment. TEX. CODE CRIM. PROC. ANN. art. 1.15 (West 2005); *see also Ex parte Martin*, 747 S.W.2d at 792-93. We will affirm the trial court's judgment if the evidence introduced embraces every essential element of the offense charged and is sufficient to establish a defendant's guilt. *See Stone v. State*, 919 S.W.2d 424, 427 (Tex. Crim. App. 1996).

A person commits the offense of aggravated sexual assault of a child younger than 14 years of age if he intentionally and knowingly causes the penetration of the female sexual organ of a

child, who is not then the spouse of the defendant, by an object, and at the time of the offense, the child was younger than 14 years of age. *See* Tex. Penal Code Ann. §§ 22.021(a)(1)(B)(i), (a)(1)(B)(iii), (a)(2)(B) (West 2011).

The record shows appellant went outside to the bounce house and was jumping around with T.G., but when she lay down under her covers appellant got under the covers too and started "spooning" her. When appellant was spooning T.G., he started putting his hands all over her legs and feeling her up through her shorts and underwear to touch her vagina skin to skin. T.G. described appellant putting his fingers "all over her private area, like going from my clitoris down to my vagina hole." Even though appellant complains that T.G.'s testimony is uncorroborated, in Texas, the testimony of a child complainant itself is enough to support a conviction for aggravated sexual assault. TEX. CODE CRIM. PROC. ANN. art. 38.07(a), (b)(1) (West Supp. 2011); *see Tear v. State*, 74 S.W.3d 555, 560 (Tex. App.—Dallas 2002, pet. ref'd); *Sandoval v. State*, 52 S.W.3d 851, 854-55 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd) We conclude the evidence is sufficient to show appellant committed the offense of aggravated sexual assault of a child younger than 14 years of age. *See Ex parte Martin*, 747 S.W.2d at 791-93. We overrule appellant's first issue.

In his second issue, appellant argues he received ineffective assistance of counsel because trial counsel permitted Detective Hale to testify about what R.G. told him appellant had done, trial counsel stipulated Detective Hale was an expert in matters pertaining to child abuse, and trial counsel did not request the State to elect the specific act of sexual assault on which it was relying for conviction. A claim of ineffective assistance of counsel is reviewed under the *Strickland* test. *Hernandez v. State*, 988 S.W.2d 770, 770 (Tex. Crim. App. 1999) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). In determining whether counsel rendered ineffective assistance, an appellate court considers two factors: (1) whether counsel's performance fell below an objective standard of reasonableness and (2) whether, but for

counsel's deficient performance, the result of the proceeding would have been different. *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).

Appellant bears the burden of proving his counsel was ineffective by a preponderance of the evidence. *Id.* at 813. There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002); *Thompson*, 9 S.W.3d at 813. To defeat this presumption, appellant must prove that there was no plausible professional reason for a specific act or omission. *Bone*, 77 S.W.3d at 836. Any allegations of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson*, 9 S.W.3d at 813. Thus, a reviewing court will rarely be able to fairly evaluate the merits of an ineffective assistance claim on direct appeal because the record on direct appeal is not developed adequately to reflect the reasons for defense counsel's actions at trial. *Mata v. State*, 226 S.W.3d 425, 430 (Tex. Crim. App. 2007).

Here, we do not have an adequate record to review appellant's claim of ineffectiveness. *See id.*; *Thompson*, 9 S.W.3d at 813-15. Appellant must prove that there is no possible strategic reason for counsel's actions and trial counsel should be given the opportunity to explain his actions before being denounced as "ineffective." *Bone*, 77 S.W.3d at 836. The record before us is devoid of evidence from trial counsel himself and is "simply undeveloped and cannot adequately reflect the failings of trial counsel." *Thompson*, 9 S.W.3d at 814 (citing *Jackson v. State*, 973 S.W.2d 954,957 (Tex. Crim. App. 1998)). The record is silent as to why appellant's trial counsel permitted Detective Hale to testify about what R.G. told him appellant had done, stipulated Detective Hale was an expert in matters pertaining to child abuse, and did not request the State to elect the specific act of sexual assault on which it was relying for conviction. Therefore, appellant has failed to rebut the presumption that counsel's decisions were reasonable. *Bone*, 77 S.W.3d at 833; *Thompson*, 9 S.W.3d at 813-814. Further, as we have already

concluded, the evidence showed appellant committed the charged offense when T.G. described how appellant putt his fingers "all over her private area, like going from my clitoris down to my vagina hole." We overrule appellant's second issue.

We affirm the trial court's judgment.

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE

Do Not Publish
TEX. R. APP. P. 47

111310F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

CANDELO PEREZ TORRES, Appellant

No. 05-11-01310-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 204th Judicial District Court, Dallas County, Texas
Trial Court Cause No. F08-24517-Q.
Opinion delivered by Justice Bridges.
Justices Lang and Richter participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered July 10, 2013

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE